FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 06, 2025

SEAN F. McAVOY, CLERK

1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| MARIE WALKER, an individual, | No. 2:24-CV-00048-MKD |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DECLARATORY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| vs. | |
| STATE FARM FIRE AND CASUALTY COMPANY, a foreign corporation, | |
| Defendant. | **ECF Nos. 17, 24** |

Before the Court are Plaintiff's Motion for Partial Summary Judgment, ECF No. 17, and Defendant's Motion for Partial Summary Judgment Regarding Coverage, Insurance Fair Conduct Act Claim, and Bad Faith Claim. ECF No. 24. On November 26, 2024, the Court held a hearing on the cross-motions for summary judgment. ECF No. 46. John Cadagan appeared for Plaintiff. Colton Arias appeared for Defendant. The Court has reviewed the briefing and the record and is fully informed. The Court grants Defendant's motion and denies Plaintiff's motion.

ORDER - 1

# BACKGROUND

## A. Factual Background

The undisputed relevant facts are as follows. Ms. Walker owns a home located in Spokane, Washington. ECF No. 45 at 2 ¶ 1. State Farm insured the home under homeowners' policy No. 47-BS-U722-1 (the "Policy"). *Id.* at 2 ¶ 2.

On January 30, 2023, Ms. Walker discovered substantial water in the crawl space under her home. *Id.* at 2 ¶ 3. A sump pump located in the basement of Ms. Walker's home "continuously pumps to prevent water from entering the home." *Id.* at 2 ¶ 4. There was no power outage at the property when she discovered the water. *Id.* at 2 ¶ 3. Ms. Walker reported the claim to her State Farm agent the same day, but State Farm did not inspect the home until more than two weeks later. *Id.* at 2-3 ¶ 6.

Ms. Walker contacted State Farm's Premier Service Program vendor – ServiceMaster by Compass – who refused to remove the standing water in Ms. Walker's crawl space. *Id.* at 3 ¶ 7. Ms. Walker and Russell Williams, a family friend and general contractor, removed the standing water themselves by plugging the existing sump pump into a different outlet in the home, at which point it ran without issue, and by dropping a second portable pump directly into the crawl space. *Id.*

Mr. Williams contacted two local companies to come to the home and

ORDER - 2

examine the GFI outlet and sump pump: OK Electric and Pat's Pumps. *Id.* at 3 ¶ 8.
Mitch Sattler and Christopher Cyr of OK Electric determined that the GFI outlet
had tripped and replaced the old GFI outlet with a new one because it was the most
cost-effective solution. *Id.* at 3-4 ¶ 9. Mr. Sattler, who visited the home twice, did
not have an opinion as to why the GFI tripped. *Id.* In his deposition, Mr. Cyr
testified that when he went to Ms. Walker's property for OK Electric's second
visit, he encountered a "bad GFI" that was taken out and replaced with a new one.
*Id.* Mr. Cyr stated that it was his conclusion that the GFI was old, worn, and
needed to be replaced. *Id.* Mr. Cyr's opinion as to why the GFI tripped was that
most likely something inside the GFI had faulted, but he also testified he did not
test if anything had faulted in the GFI, never relayed to State Farm that he believed
something had faulted inside the GFI and could not say "exactly" what caused it to
trip. *Id.*

Pat Rickey of Pat's Pump's examined the sump pump. *Id.* at 4 ¶ 10. In his
deposition, Mr. Rickey testified that the pump was in working order. *Id.* Mr.
Rickey also stated "that he told Ms. Walker that she did not need to replace her
sump pump, but that Ms. Walker decided to replace the pump" to be safe. *Id.*
State Farm's claim file contains a note of a call with Mr. Rickey on February 15,
2023, wherein he allegedly stated the sump pump needed replaced and that Pat's
Pumps did not have the old sump pump, but that the motor had locked up. *Id.* at 4

ORDER - 3

¶ 11.  Mr. Rickey denies this call ever took place or that he said what is attributed

to him.  *Id.*  In a declaration, Mr. Rickey stated that:

> [H]ad State Farm asked, he would have told State Farm: (a) the pump was in
> perfect working order, it did not need to be replaced, the motor did not lock
> up, and it did not even need to be cleaned; (b) the only reason the pump was
> not pumping on January 30 [was] because it was not receiving power; (c) the
> pump was not defective and did not fail; (d) he told Ms. Walker she did not
> need a new pump, but she wanted a new one, of the same make and model,
> just to be safe; and (e) the pump was plugged the pump into another GFI
> outlet where it pumped the water out of the crawl space, and it continued
> pumping for another week while the new pump was being delivered.

*Id.* at 7 ¶ 19.

On February 3, 2023, State Farm wrote: "FOL [Facts of Loss] as provided

by contact: We have found out that the sump pump did not fail.  The electrical that

it was plugged into failed and the plumber said the pump is fine."  *Id.* at 4-5 ¶ 12.

On February 15, 2023, State Farm Claims Team Manager Kyle Rice

reviewed the claim and entered a file note at 10:39 AM CST.  *Id.* at 5 ¶ 13.  Mr.

Rice reviewed the following documents: two OK Electric invoices, a letter from

OK Electric, and an invoice from Pat's Pumps.  *Id.* at 6 ¶ 15.  Based on these

documents, Mr. Rice determined the electrical failed because "the sump pump

itself was malfunctioning, had broken down, had seized or stopped. And that was

causing the electrical to trip."  *Id.*

At 10:44 AM CST, Mr. Rice noted in the claim file: "in reviewing the

documents, the sump pump failed due to a faulty switch. No coverage for sump

pump or faulty switch and no coverage for mold. Please work with PH contractor and mitigation company to determine damages and resulting estimate for repairs. Partial denial needed." *Id.* at 5 ¶ 14.

The claim file also includes notes regarding an alleged call with OK Electric. *Id.* at 7 ¶ 18. OK Electric employees testified they did not recall such a call and that such a call would have been uncommon. *Id.*

Theresa Hastings, a State Farm Claims Representative, did not recall reviewing the invoices and letter from OK Electric and Pat's Pumps in the claim file. *Id.* at 6 ¶ 17. She inspected Ms. Walker's home on February 15, 2023. *Id.* at 7 ¶ 20. After the inspection, Ms. Hastings recorded in the claim file that "Cause of Loss (how/why) and how confirmed: Water filled up the crawl space when sump pump motor malfunctioned and overloaded the 15-amp circuit and the GFI shut off." *Id.* at 8 ¶ 21.

Ms. Hastings was deposed and testified that she was supposed to follow three steps when adjusting the claim: (1) call the contact person, usually the policyholder, to get the facts of the loss; (2) conduct an inspection; and (3) review the policy and apply the policy to the loss, including making appropriate payments. *Id.* at 6 ¶ 16. To properly investigate a claim, Ms. Hastings testified she was supposed to determine the cause of loss; and, if the cause of loss was not clear she had an obligation to continue investigating, which could include hiring an expert,

before issuing a denial.  *Id.*

State Farm sent Ms. Walker a payment for $6,974.01 on February 16, 2023. *Id.* at 8 ¶ 22.  The parties dispute whether State Farm informed Ms. Walker of any coverage limitations or exclusions during a phone call that day.  *Id.*

State Farm issued Ms. Walker a partial denial of coverage letter, signed by Ms. Hastings, on February 20, 2023.  *Id.* at 9 ¶ 24.  The letter stated: "**Cause of Loss**: Our inspection noted water damage to the insulation and ductwork in your crawl space.  The predominant cause of the damage is failure of your sump pump and a failure of the GFI/outlet breaker that allowed the water to backup within your crawlspace."  *Id.*  The letter set out language of exclusions 1.f. and 1.g. of the Policy.  *Id.*  However, the remaining exclusions and other policy provisions cited in the February 20, 2023, letter were not from Ms. Walker's Policy, and State Farm admitted they were mistakenly quoted from a different policy.  *Id.*  The letter said there was limited coverage under the Backup of Sewer or Drain Endorsement ("BUSD Endorsement"), but it did not include the full language of the BUSD Endorsement in the letter.  *Id.*

Ms. Hastings testified that she made the coverage decision with Mr. Rice, but subsequently stated "that she relied on Mr. Rice to make the coverage decision."  *Id.* at 8 ¶ 23.  Ms. Hastings also indicated that she did not make the determination of what exclusions to cite in a coverage denial, and that Mr. Rice

made those determinations.  *Id.*  Ms. Hastings represented that she did not know

how Mr. Rice concluded that the sump pump failed due to a faulty switch and

admitted that Mr. Rice's conclusion was contradicted by the February 3, 2023,

claim file note containing the "Facts of Loss" from the policyholder.[1]  *Id.*

**B. Procedural History**

On September 25, 2023, Ms. Walker sent State Farm an IFCA notice of

intent to file an IFCA claim.  ECF No. 18-13.  After receiving Ms. Walker's

notice, State Farm sent a subsequent letter to Ms. Walker dated October 11, 2023,

correcting misquotes in its February 20, 2023, letter.  ECF No. 18-14.  State Farm

declined to change its coverage position after receipt of the IFCA notice

contending its coverage decision was both reasonable and correct.  *See id.*

On January 8, 2024, Ms. Walker filed suit against State Farm in Spokane

County Superior Court.  ECF No. 1 at 7-27.  Ms. Walker brought claims for:

(1) declaratory judgment, (2) breach of contract, (3) violations of the Washington

Consumer Protection Act (CPA), RCW ch. 19.86, (4) common law insurance bad

faith, and (5) violations of the Insurance Fair Conduct Act (IFCA), RCW ch.

---

[1] State Farm contends it is disputed that Mr. Rice's conclusion was in fact

"contradicted" by the note from February 3, 2023, regarding "Facts of Loss" from

the policyholder.  *Id.*

48.30.  *Id.* at 21-26.  State Farm removed the case to this Court on February 13, 2024.  ECF No. 1.  On March 20, 2024, State Farm filed its Answer.  ECF No. 7.

On September 20, 2024, Ms. Walker filed a Motion for Partial Summary Judgment, ECF No. 17, and State Farm also filed a Motion for Partial Summary Judgment, ECF No. 24.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (citation omitted).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record,

ORDER - 8

"specific facts" showing that there is a genuine dispute of material fact for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## DISCUSSION

Ms. Walker seeks summary judgment on her insurance coverage claim, breach of contract claims, bad faith claim, certain claims regarding violations of the Washington CPA, and IFCA claim. ECF No. 17 at 7. State Farm, in turn, seeks summary judgment on Plaintiff's insurance coverage, breach of contract, IFCA, and bad faith claims. ECF No. 24 at 3.

### A. Declaratory Judgment Claim Regarding Coverage

#### 1. Interpretation of Insurance Contracts

"Interpretation of an insurance contract is a question of law[.]" *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) (citation omitted); *see also Vision One, LLC v. Phila. Indem. Ins. Co.*, 276 P.3d 300, 305 (Wash.

2012) (citation omitted).  The Washington courts "construe insurance policies as a whole, giving the language a fair, reasonable, and sensible construction as would be given by an average person purchasing insurance." *Gardens Condo. v. Farmers Ins. Exch.*, 544 P.3d 499, 502 (Wash. 2024).  "Where a term is undefined, it is assigned its ordinary meaning." *Vision One*, 276 P.3d at 306 (citation omitted). "[I]f the policy language is clear and unambiguous, [the court] must enforce it as written[.]" *Quadrant*, 110 P.3d at 737 (citation omitted).  "[A] clause is ambiguous only when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* (citation and quotation marks omitted).  "Ambiguities in the policy are construed against the drafter-insurer." *Vision One*, 276 P.3d at 306 (citation omitted).

There are generally two types of insurance policies: named-peril and all-risk. *Id.*  All-risk policies cover all possible risks of loss except for risks that are specifically excluded. *Id.* (citations omitted).  "Courts construe exclusions in a policy strictly against the insurer." *Gardens Condo.*, 544 P.3d at 503.

"Courts determine whether an insurance policy covers loss or damage by characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes." *Id.* (citation and quotation marks omitted). "[C]haracterization of perils focuses on whether the events are contractually distinct, with reference to specific policy language and the perils allegedly

involved in the particular factual setting." *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 901 P.2d 1079, 1083 (Wash. Ct. App. 1995).

The Policy at issue, here, covers "accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy." ECF No. 18-1 at 31. The Policy is therefore an "all-risk" policy, so the Court turns to the exclusions to determine whether the causes of Ms. Walker's losses are explicitly excluded.

*2. The Scope of the Policy Coverage*

The Policy's Water Exclusion, section 2.c.(7), provides in relevant part, under the heading "**SECTION I - LOSSSES NOT INSURED**":

> 2. ***We*** will not pay for, under any part of this policy, any loss that is caused by one or more of the items below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises,*** arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . .
>
> c. **Water**, meaning:
>
> > . . .
> >
> > (7) water . . . from outside the ***residence premises*** plumbing system that enters through sewers or drains, or water . . . that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

ORDER - 11

> except as specifically provided in SECTION I –
> ADDITIONAL COVERAGES Backup-Up of
> Sewer or Drain.

ECF No. 18-1 at 11, 34-35.

An average purchaser of insurance reading the Policy would read the heading "**LOSSES NOT INSURED**," and understand that loss caused by the events that followed were not covered. Water that enters into and overflows from a sump pump or sump pump well is not covered.

The Policy's Water Exclusion also contains a provision for resulting or ensuing loss coverage. "[A] resulting or ensuing loss clause operates to carve out an exception to the policy exclusion." *Vision One*, 276 P.3d at 307 (citations omitted). "In this way, ensuing loss clauses limit the scope of what is otherwise excluded under the policy." *Id.* The Water Exclusion provides the following ensuing loss clause: "However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*." ECF No. 18-1 at 11.

In sum, the plain text of the Water Exclusion demonstrates that an insured should not expect coverage for losses resulting from water entering into and overflowing from a sump pump or sump pump well, but that an insured may expect coverage for fire, explosion, or theft resulting from water.

ORDER - 12

3.  *Characterizing the Perils*

The Court must now "characterize" the peril that caused Ms. Walker's losses to determine whether the peril is within the scope of coverage.  *See Gardens Condo.*, 544 P.3d at 503.

State Farm alleges that the Policy does not afford coverage for Ms. Walker's loss other than that afforded by the BUSD Endorsement.  ECF No. 24 at 6.  Specifically, State Farm asserts that (1) the Policy's Water Exclusion (2.c.(7)) precludes coverage, and (2) there is no resulting or ensuing loss coverage.  *Id.* at 6-10.  In contrast, Ms. Walker alleges: (1) water was not the cause of the loss, (2) because water was not the sole cause of the loss, the BUSD Endorsement does not limit coverage, and (3) State Farm may not change its basis for denying coverage.  ECF No. 30 at 8-13; *see also* ECF No. 17 at 16-20.

a.  Water Exclusion

State Farm asserts that "water invaded Plaintiff's crawl space because the sump pump system in place that had worked for years stopped working as intended."  ECF No. 24 at 6.  State Farm contends that coverage is precluded for this loss under the Water Exclusion.  *Id.*

Because contract interpretation turns on the language of the specific contract at issue, comparing this case to others has limited utility.  However, State Farm relies heavily upon *Muscutt v. Allstate Property & Casualty Insurance Co.*, No.

12-CV-181, 2014 WL 4437650 (W.D. Ky. Sept. 9, 2014), so the Court addresses it

briefly.  In *Muscutt*, the insured-plaintiff's basement flooded after the sump

pump's check valve "seized," causing the sump pump to malfunction.  *Id.* at *1.

Allstate denied coverage; the court found the following provisions to be the "most

relevant exclusions":

> **C.  We** do not cover loss to property described in **Coverage A—Dwelling Protection, Coverage B— Other Structure Protection or Coverage C—Personal Property Protection** consisting of or caused by the following:
>
> 1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.
>
> 2. Water or any other substance that:
>
>    a)  backs up through sewers or drains; or
>
>    b)  overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.
>
> 3. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises.**

*Id.* at *1, *3 (emphases in original).  The court determined that both the sump

pump exclusion (C.2) and the catchall water damage exclusion (C.3) precluded

coverage of the plaintiff's losses.  *Id.* at *4-6.  The court found that the sump pump

exclusion (C.2) was "clearly applicable," as "the check valve attached to

[p]laintiff's sump pump system seized, leading to a malfunction of the pump itself.

ORDER - 14

The water, which overflowed from the sump pump, then damaged [the p]laintiff's basement and his personal property." *Id.* at *5. The court rejected the plaintiff's contention that the "seizure of the check valve, not the sump pump's malfunction, constituted the predominant cause of his property losses," finding that the check valve was part of the "system designed for the removal of subsurface water" covered by the sump pump exclusion. *Id.* The court also found that the catchall water damage exclusion (C.3) precluded coverage for the plaintiff, as his "losses resulted from ground water entering his basement and harming his house and personal property." *Id.* at *6.

Here, the parties have presented evidence that the GFI outlet tripped, which led to the sump pump failing to work and water overflowing into Ms. Walker's basement. *See* ECF No. 45 at 3-4 ¶ 9. For example, Mr. Williams declared that when he arrived at Ms. Walker's home, he "discovered the existing sump pump was not pumping water and that the GFI outlet it was plugged into would not reset long enough for the sump pump to do more than make a noise." ECF No. 21 at 2 ¶ 5. Mr. Williams stated, "I unplugged the sump pump from the GFI outlet that would not reset, ran an extension cord from the sump pump to another outlet, and plugged it in. The sump pump worked." *Id.* at 2 ¶ 6. Mr. Sattler of OK Electric testified, "the GFI tripped and wasn't sending power through to the sump pump." ECF No. 18-3 at 13. Mr. Cyr of OK Electric also stated, "we had determined that

1   there's a possibility that the GFI was bad." ECF No. 18-4 at 8. Mr. Rickey of

2   Pat's Pumps who inspected Ms. Walker's sump pump, likewise testified that "the

3   pump was in perfect working order" and that "the only reason the pump was not

4   pumping was because it was not receiving power." ECF No. 20 at 2-3 ¶¶ 8.a – 8.b.

5   There appears to be no genuine dispute that the power source to the sump pump

6   failed.

7        Ms. Walker alleges that this GFI tripping was the "***cause*** of the Loss" and

8   that the water damage was the "***ensuing loss***." ECF No. 30 at 9. The crux of Ms.

9   Walker's argument is that the Water Exclusion applies to losses "caused by . . .

10  **Water**," but Ms. Walker's loss was caused by the GFI tripping. *Id.* Ms. Walker

11  also distinguishes *Muscutt* on the ground that the sump pump exclusion in *Muscutt*

12  was "much broader" and excluded losses "consisting of or caused by" water,

13  whereas the Water Exclusion in the Policy here only excludes losses "caused by"

14  water. *Id.* at 10. Ms. Walker further opines that in *Muscutt* the check valve, which

15  was a part of the sump pump, ceased to function, but in this case "the GFI—an

16  electrical component separate from the sump pump, and not a component of the

17  pump itself—tripped, causing the Loss." *Id.* at 10-11.

18       The Court takes the position of an average insurance purchaser. *See*

19  *Gardens Condo.*, 544 P.3d at 502. As the Washington Supreme Court has

20  instructed, "[a]n insured may not avoid a contractual exclusion merely by affixing

ORDER - 16

an additional label or separate characterization to the act or event causing the loss." *Kish v. Ins. Co. of N. Am.*, 883 P.2d 308, 311 (Wash. 1994) (citation and quotation marks omitted).  Ms. Walker seeks to characterize the cause of her loss as the GFI tripping.  However, this characterization would vitiate all meaning from the Water Exclusion.  While the Court must construe ambiguities against the insurer, *see Vision One*, 276 P.3d at 306, it cannot "create ambiguity where none exists." *Quadrant*, 110 P.3d at 737.

The Water Exclusion explicitly excludes losses caused by water that overflows from a sump pump or sump pump well "regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from natural or external forces, or occurs as a result of any combination of these[.]"  ECF No. 18-1 at 34-35.  The failure of the GFI may have been an "external force[]" that contributed to the loss, but the Water Exclusion broadly accounts for "natural or external forces," as well as any combination thereof.  *See id.*

As noted by State Farm, *see* ECF No. 24 at 9, without power, the sump pump system did not work to prevent water from invading Ms. Walker's crawl space.  Ms. Walker's loss was due to water entering her basement.  Similar to *Muscutt*, the plain language of the Policy's Water Exclusion (2.c.(7)) excludes coverage for damage from water entering into and overflowing from a sump pump

1    or sump pump well.  *See* ECF No. 18-1 at 11.

2              b.  Resulting or Ensuing Loss Coverage

3         State Farm asserts that under the terms of Ms. Walker's Policy, there is no

4    ensuing loss coverage.  ECF No. 24 at 10.  The Policy's Water Exclusion provides

5    ensuing loss coverage for fire, explosion, or theft resulting from water.  ECF No.

6    18-1 at 11.  Ms. Walker has not alleged that any ensuing fire, explosion, or theft

7    occurred.  Thus, the Court finds that there is no ensuing loss coverage under the

8    Policy's Water Exclusion.

9              c.  The Back-up of Sewer or Drain Endorsement

10        Ms. Walker alleges, "[b]y its plain language, the BUSD Endorsement is

11   triggered **only** if the Loss is '***directly and immediately caused solely by water or***

12   ***sewage***[.]'"  ECF No. 17 at 19 (quoting ECF No. 18-1 at 10) (emphasis added by

13   Plaintiff).  Ms. Walker further contends "[h]ere, the 'back-up' was caused by the

14   GFI suddenly no longer sending power to the pump; 'the back-up' was not caused

15   'solely-by' the water itself," and "[t]herefore, the BUSD Endorsement does not

16   limit the coverage available to the Loss as a matter of law."  *Id.* at 19-20.  State

17   Farm alleges that this is "a strained, unreasonable interpretation of the Policy."

18   ECF No. 33 at 10.  Alternatively, Ms. Walker alleges the BUSD Endorsement is

19   susceptible to two reasonable interpretations.  ECF No. 17 at 20.

20        A court "will hold that a clause is ambiguous only when, on its face, it is

ORDER - 18

fairly susceptible to two different interpretations, both of which are reasonable." *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525, 531 (Wash. 2022) (citation and quotation marks omitted). "[The insured] does not need to show that his [or her] list of possible interpretations, or any one of them, is more reasonable than that espoused by [the insurer], but only that there is more than one reasonable interpretation." *Kaplan v. Nw. Mut. Life Ins. Co.*, 65 P.3d 16, 25 (Wash. Ct. App. 2003).

The BUSD Endorsement is not susceptible to two different interpretations. The BUSD Endorsement reads:

> **Back-up** of **Sewer** or Drain. *We* will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the ***dwelling,*** caused by back-up of water or sewage, subject to the following:
>
> a. The back-up must be directly and immediately caused solely by water or sewage:
>
> (1) from outside the ***residence premises*** plumbing system that enters through a sewer or drain located inside the interior of the *dwelling;* or
>
> (2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the ***dwelling*** designed to remove subsurface water drained from the foundation area.

ECF No. 18-1 at 10.

First, as detailed above, the cause of Ms. Walker's loss was water. Second, while Ms. Walker seeks to prevent the Court from limiting coverage under the BUSD Endorsement, the BUSD Endorsement does not limit coverage. Rather, it

ORDER - 19

provides coverage for losses "caused by back-up of water or sewage" that might

otherwise be excluded by the Water Exclusion. *See* ECF No. 18-1 at 10-11

(stating that State Farm will not pay for certain losses including "water . . . from

outside the ***residence premises*** plumbing system that enters through sewers or

drains, or water . . . that enters into and overflows from within a sump pump, sump

pump well, or any other system designed to remove subsurface water that is

drained from the foundation area").

The Court finds that State Farm's BUSD Endorsement is not ambiguous and

that State Farm did not breach the contract as a matter of law in relation to the

BUSD Endorsement.

d. State Farm's Basis for Denying Coverage

Ms. Walker also alleges that State Farm "never determined the cause of the

Loss was from water prior to litigation" and argues that it cannot now change its

basis for denying coverage. ECF No. 30 at 12.

"Washington . . . recognize[s] a common law doctrine known as 'mend the

hold,' which precludes an insurer from changing the basis for avoiding liability

after the onset of litigation." *Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp.

2d 1235, 1245 (W.D. Wash. 2014) (citing *Vision One*, 276 P.3d at 309) (other

citation omitted). "[T]he mend the hold doctrine may be invoked to preclude

insurers from introducing new or changed bases for denying insurance coverage

ORDER - 20

once litigation has begun." *Id.* (citation omitted). "To prevail under this form of estoppel, the insured must demonstrate that she 'either suffered prejudice or the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter.'" *Id.* (quoting *Hayden v. Mutual of Enumclaw Ins. Co.*, 1 P.3d 1167, 1170 (Wash. 2000)) (other citation omitted).

However, in its initial February 20, 2023, denial letter, State Farm stated that Ms. Walker's loss was barred under the Water Exclusion provision. *See* ECF No. 18-11 at 3-4. While the language quoted by State Farm in this letter was not the language from Ms. Walker's Policy, it was similar and placed Ms. Walker on notice that State Farm was claiming her loss was caused by water. Further, State Farm's October 11, 2023, letter to Ms. Walker correctly quoted the Water Exclusion in her Policy. ECF No. 18-14 at 5. Although this second letter was sent after State Farm was on notice of potential litigation, State Farm was not introducing a new or changed basis for denying coverage at this time. It was simply correcting the language of the Water Exclusion on which it had relied prior to Ms. Walker's notice of potential litigation. There is no indication that State Farm acted in bad faith when it cited the incorrect policy provisions in its initial denial letter, which it subsequently corrected when it was made aware of this mistake. Lastly, Ms. Walker does not point to any evidence to demonstrate that she suffered prejudice as a result of this incorrect citation. *See Karpenski*, 999 F.

Supp. 2d at 1245.

Washington's mend the hold doctrine does not prevent State Farm from asserting that Ms. Walker's claims are barred under the Water Exclusion in her Policy.

e. The Efficient Proximate Cause Rule

Ms. Walker alleges that GFI tripping was the "efficient proximate cause" of her loss and that, "[a]s State Farm cannot show an exclusion specifically excludes GFI's tripping, it is a covered cause of loss as a matter of law." ECF No. 17 at 16-19. State Farm asserts "the efficient proximate cause rule should not apply because the cause of the loss is clearly water that overflowed from the sump pump well." ECF No. 24 at 10. State Farm further asserts that Ms. Walker cannot avoid contractual exclusions "by affixing labels or characterizations to an act or event causing a loss." *Id.* In support of this proposition, State Farm cites to *United Specialty Ins. Co. v. Shot Shakers, Inc*. C18-596, 2019 WL 199645 (W.D. Wash. Jan. 15, 2019). Ms. Walker asserts that *Shot Shakers* is inapposite. ECF No. 30 at 15.

Again, the Court notes that because the meaning of a contract turns on the specific contract language, there is limited utility in comparing this case to others. However, due to the parties' emphasis on this case, the Court briefly discusses it. In *Shot Shakers*, a fire broke out at a restaurant insured by the plaintiff. 2019 WL

199645, at *1.  The restaurant's insurance policy included a Protective Safeguards Endorsement Exclusion under which the insurance company was not required to pay for losses caused by or resulting from fire if the restaurant knew of any suspension or impairment in any protective safeguard and failed to provide notice of this, or if the restaurant failed to maintain protective safeguards in working order.  *Id.* at *11.  The restaurant asserted that the Safeguards Exclusion was not applicable under the efficient proximate cause rule.  *Id.*  Specifically, the restaurant "alleged that either employee negligence—leaving the broiler on after closing—or the excessive grease in the hoods, ducts, and filters were the efficient proximate causes of the loss, and that both are 'covered perils' under the Policy."  *Id.*  The court found that this was "not an efficient proximate cause rule case" because there was "only one cause of the loss—the fire."  *Id.* at *12 (citing *Lesure v. Farmers Ins. Co. of Wash.*, 392 P.3d 1076, 1079-80 (Wash. Ct. App. 2016)).

Here, Ms. Walker similarly tries to characterize the cause of her loss as the GFI tripping so that she may invoke the efficient proximate cause rule.  "When, however, the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application."  *Kish*, 883 P.2d at 311 (citation and quotation marks omitted).  State Farm's February 20, 2023, letter states: "**Cause of Loss**: Our inspection noted water damage to the insulation and ductwork in your crawl

1  space.  The predominant cause of the damage is failure of your sump pump and a

2  failure of the GFI/outlet breaker that allowed the *water to backup within your*

3  *crawlspace*."  ECF No. 18-11 at 2 (emphasis added).  This is not an efficient

4  proximate cause case; Ms. Walker's losses were caused only by water overflowing

5  from the sump pump well.  *See Shot Shakers*, 2019 WL 199645, at \*12.  Ms.

6  Walker cannot avoid the Water Exclusion by characterizing the cause of the loss as

7  the GFI.  *See Kish,* 883 P.2d at 311.

8       In conclusion, the Court finds that the efficient proximate cause rule does

9  not apply in this case. [2]  The Court grants State Farm's motion for summary

10  judgment regarding Ms. Walker's insurance coverage claim and denies Ms.

11  Walker's motion for summary judgment on the same issue.

12  **B. Breach of Contract Claims**

13       Ms. Walker seeks summary judgment on her breach of contract claims,

14  contending that State Farm breached the Policy as a matter of law by (1) "not

15  explaining how the misquoted exclusions applied," (2) "denying coverage despite a

16

17  [2] State Farm argues in the alternative that, to the extent the efficient proximate

18  cause rule is applied, the application of the rule would not provide coverage

19  beyond the BUSD Endorsement.  ECF No. 24 at 13.  As the Court finds that the

20  efficient proximate rule does not apply, the Court does not reach this argument.

ORDER - 24

GFI tripping not being an excluded peril," (3) "applying the BUSD Endorsement to limit coverage," and (4) "acting in bad faith."  ECF No. 17 at 7.  State Farm also seeks summary judgment on Ms. Walker's breach of contract claims, contending that "[t]he undisputed facts as applied to applicable law establish that State Farm correctly concluded the limited coverage afforded by the Policy's BUSD Endorsement represents the only coverage available for Plaintiff's loss."  ECF No. 24 at 3.

"To bring a claim for breach of contract, a party must point to a separate duty contained in the contract that is different from the duties already imposed by law on the parties."  *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 215 (Wash. 2018) (citing *Bank of Am. NT & SA v. David W. Hubert, P.C.*, 101 P.3d 409, 420 (Wash. 2004)).  Here, Ms. Walker relies on WAC 284-30-330(13) to argue that State Farm breached its contract with her by not explaining how the misquoted exclusions applied.  ECF No. 17 at 15.  Ms. Walker does not point to any duty contained in the contract.  Thus, Ms. Walker fails to allege a claim for breach of contract based on State Farm's alleged failure to explain how the misquoted exclusions applied.

Further, as set forth in this Order, the Court finds that Ms. Walker was not entitled to coverage beyond the limited coverage of the BUSD Endorsement and that State Farm did not act in bad faith in denying additional coverage.

Accordingly, the Court grants State Farm's motion for summary judgment and denies Ms. Walker's motion for summary judgment on Ms. Walker's breach of contract claims.

**C. Washington CPA Claims**

Ms. Walker seeks summary judgment on her claims of violations of the Washington CPA, contending that State Farm's conduct violated WAC 284-30-330(1), (7), (9), (13) and WAC 284-30-350(1).  ECF No. 17 at 7.  State Farm does not move for summary judgment on these claims.  *See* ECF No. 24.

To establish a CPA violation, a plaintiff must prove: "(1) an unfair or deceptive act or practice occurred, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) the plaintiff suffered an injury to business or property, and (5) the plaintiff can demonstrate a causal link between the unfair or deceptive act or practice and the injury." *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 228 P.3d 1260, 1269 (Wash. 2010) (citation omitted).  An unfair or deceptive trade practice may be established by showing that the alleged act constitutes a per se unfair trade practice, including an unfair claims settlement practice under WAC 284-30-330.  *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 539 (Wash. 1990); *see also Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 283-84 (Wash. 2002) (citing *Leingang v. Pierce Cnty. Med. Bureau*,

*Inc.*, 930 P.2d 288, 297 (Wash. 1997)).

    *1. Policy Language in the February 20, 2023, Denial*

    Ms. Walker alleges that State Farm quoting the incorrect policy provisions in its February 20, 2023, denial letter and failing to quote the BUSD Endorsement was a violation of WAC 284-30-330(1), -330(9), and -350(1).[3] ECF No. 17 at 22. State Farm acknowledges that it mistakenly quoted from a different insurance policy in portions of the initial denial letter but contends that the language quoted was not materially different from the language in Ms. Walker's Policy. ECF No. 33 at 14-15. State Farm also asserts that it rectified its mistake in its October 11, 2023, letter. *Id.* at 15.

    Under WAC 284-30-330(1), "[m]isrepresenting pertinent facts or insurance policy provisions" is an "unfair method[] of competition and unfair or deceptive acts or practice[] of the insurer in the business of insurance, specifically applicable to the settlement of claims." Under WAC 284-30-350(1), "[n]o insurer shall fail to

---

[3] WAC 284-30-330(9) concerns the practice of "[m]aking a claim payment to a first party claimant or beneficiary not accompanied by a statement setting forth the coverage under which the payment is made" and is not applicable to the February 20, 2023, letter, which did not involve a claim payment. Thus, the Court does not further address this code section with respect to this claim.

fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."

Here, State Farm referenced, but did not quote, the BUSD Endorsement under which it provided partial coverage. *See* ECF No. 18-11 at 5. As State Farm cited the BUSD Endorsement, this was not a misrepresentation of the Policy. State Farm cited to the pertinent Policy provision under which it was providing coverage.

It is undisputed that State Farm quoted incorrect policy provisions in its February 20, 2023, denial letter. State Farm alleges that it corrected this mistake in its October 11, 2023, letter, and that "[r]ectifying a good faith mistake does not support a bad faith conclusion." ECF No. 33 at 15. It is generally recognized that "insurance companies, like every other organization, are going to make some mistakes." *Coventry Assocs. v. Am. States Ins. Co.*, 861 P.2d 933, 937 (Wash. 1998). "As long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a *good faith* mistake." *Id.* at 937-38 (emphasis in original).

Ms. Walker alleges that State Farm only corrected its coverage position once litigation was clearly contemplated, and she again invokes the mend the hold

ORDER - 28

doctrine.  ECF No. 41 at 10.  However, Ms. Walker has not pointed to any evidence in the record establishing that she suffered prejudice or that State Farm acted in bad faith when it misquoted the Policy provisions in its initial denial letter. Thus, Washington's mend the hold doctrine does not prevent Defendant from asserting the Policy provisions quoted in the October 11, 2023, letter.

The Court denies summary judgment on Ms. Walker's claim that State Farm's misquoting of Policy language in its February 20, 2023, letter violated WAC 284-30-330(1), WAC 284-30-330(9), and WAC 284-30-350(1), as a matter of law.

### 2.  Analysis in the February 20, 2023, Denial

Ms. Walker alleges that State Farm's February 20, 2023, letter denying coverage provided no analysis and therefore violated WAC 284-30-330(13).  ECF No. 17 at 23.  State Farm alleges it "provided Plaintiff a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for State Farm's partial denial of Plaintiff's claim."  ECF No. 33 at 16.

Under WAC 284-30-330(13), "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement" is an unfair claims settlement practice.

On February 20, 2023, State Farm sent Ms. Walker a letter explaining that it

had determined "there [wa]s no coverage for a portion of the damage you have claimed under your Homeowners policy." ECF No. 18-11 at 2. Under "Cause of Loss," the letter stated: "Our inspector noted water damage to the insulation and ductwork in your crawl space. The predominant cause of the damage is failure of your sump pump and a failure of the GFI outlet/breaker that allowed water to backup within your crawlspace." *Id.* The letter then explained that "[a] portion of the damages were caused by or consisted of **Losses Not Insured** under your policy" and listed several Policy exclusions, some of which State Farm acknowledges are not from Ms. Walker's policy. *Id.* at 2-5. While these provisions are not identical to those contained in Ms. Walker's Policy, they were similar and included exclusions for water, as well as wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown. *Compare id. with* ECF No. 18-1 at 11, 33-35 (Policy language). After listing applicable exclusions, State Farm concluded that, "[w]hile the damage to your sump pump and GFI outlet/breaker were excluded from coverage[, t]he resulting backup of water was covered under endorsement HO-2622.1 BACK-UP OF SEWER OF DRAIN. This endorsement covered resulting water damage up to $14,670.00 subject to your deductible." ECF No. 18-11 at 5.

Where an insurer extends a limited coverage available under an insurance policy and cites to coverages under the policy, a claim premised on violation of

ORDER - 30

WAC 284-30-330(13) fails.  *See Carrico v. Stillwater Ins. Co.*, No. 23-CV-349, 2024 WL 308106, at *4 (W.D. Wash. Jan. 26, 2024), *reconsideration denied,* 2024 WL 1973216 (W.D. Wash. May 3, 2024) (finding that a claim under WAC 284-30-330(13) failed, as the insurance company's letter listed the coverage available under the policy and explained the policy limit for water damage backing up from sewers or drains).  State Farm's February 20, 2023, letter cited the Policy exclusions and the BUSD Endorsement under which limited coverage was provided.  *See* ECF No. 18-11; *Carrico*, 2024 WL 308106 at *4.

A reasonable juror could find that State Farm's February 20, 2023, letter provided a reasonable explanation for the basis of its denial in relation to the facts.  Accordingly, the Court denies summary judgment on Ms. Walker's claim that State Farm's analysis in the February 20, 2023, letter violated WAC 284-30-330(13).

### 3.  February 16, 2023, Payment

Ms. Walker alleges that State Farm's February 16, 2023, payment "failed to identify purported coverage limitations it would assert in its letter four days later" and that this is a deceptive practice under WAC 284-30-330(9).  ECF No. 17 at 23.  State Farm alleges that it complied with WAC 284-30-330(9).  ECF No. 33 at 16.

Under WAC 284-30-330(9), "[m]aking a claim payment to a first party claimant or beneficiary not accompanied by a statement setting forth the coverage

1  under which the payment is made" is an unfair claims settlement practice.  This

2  provision does not require that this statement include coverage limitations.  *See id.*

3      Here, the February 16, 2023, payment State Farm sent to Ms. Walker stated

4  that the payment was for "Backup of Sewer and Drain – Building" coverage.  ECF

5  No. 25-1 at 85-88.  Thus, the payment was "accompanied by a statement setting

6  forth the coverage under which the payment [wa]s made."  *See* WAC 284-30-

7  330(9).

8      The Court denies summary judgment on Ms. Walker's claim that the lack of

9  identified coverage limitations accompanying the February 16, 2023, payment

10  violated WAC 284-30-330(9).

11      *4.  Compelling Ms. Walker to Initiate This Lawsuit*

12      Ms. Walker alleges that as a matter of law, State Farm has violated WAC

13  284-30-330(7).  ECF No. 17 at 25.  State Farm alleges: (1) it is for the fact finder

14  to determine whether the insurer had "no reasonable justification for its conduct"

15  and (2) summary judgment on this claim is premature.  ECF No. 33 at 20 (quoting

16  *Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106, 2014 WL 1494030, at *5

17  (W.D. Wash. Apr. 16, 2014)) (quotation marks omitted).

18      WAC 284-30-330(7) states that "[c]ompelling a first party claimant to

19  initiate or submit to litigation, arbitration, or appraisal to recover amounts due

20  under an insurance policy by offering substantially less than the *amounts ultimately*

*recovered in such actions or proceedings*" is an unfair claims settlement practice. (emphasis added).

In this case, there has been no ultimate recovery, so a decision on this issue would be premature. *See Phillips v. USAA Cas. Ins. Co.*, No. 16-CV-381, 2017 WL 1534198, at *4 (E.D. Wash. Apr. 27, 2017).

The Court denies summary judgment on Ms. Walker's claim that compelling her to initiate this lawsuit constitutes a violation of WAC 284-30-330(9).

In conclusion, the Court denies Ms. Walker's motion for summary judgment on her claims regarding violations of the Washington CPA.

## D. Bad Faith Claim

Ms. Walker seeks summary judgment on her bad faith claim, contending that State Farm "committed bad faith as a matter of law when it denied coverage before conducting a reasonable investigation of the Loss and continued to deny coverage while relying on its unreasonable investigation." ECF No. 17 at 24. State Farm also seeks summary judgment on Ms. Walker's bad faith claim on the grounds that its partial denial of coverage was based on a reasonable interpretation of the Policy. ECF No. 24 at 19.

"In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (citation and quotation marks

ORDER - 33

omitted).  "If the insurer's denial of coverage is based on a reasonable

interpretation of the insurance policy, there is no action for bad faith."  *Overton v.*

*Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (citation omitted).

State Farm's denial of coverage was premised upon a reasonable and, as

explained above, correct interpretation of the Policy.  The denial of coverage

cannot support Ms. Walker's bad faith claim.  Ms. Walker focuses primarily on the

fact that State Farm's coverage determination was based on a brief review of

documentation and a failure to determine the cause of the loss.  *See* ECF No. 17 a

24-25.  However, Mr. Rice based his determination on the documentation provided

by Ms. Walker's own contractors.  *See* ECF No. 45 at 6 ¶ 15.  It can be reasonable

for an insurer to rely on an insured's own investigation.  *See Hiller v. Allstate*

*Prop. & Cas. Ins. Co.*, No. 11-CV-291, 2012 WL 2325603, at *11 (E.D. Wash.

June 19, 2012) (finding it was not unreasonable for an insurer to rely on an

insured's investigation rather than re-excavate an already repaired drain).  And

once an insurer has concluded that all potential causes of a loss are excluded from

coverage, it is not required to further investigate to conclusively determine what

cause the failure.  *See Capelouto v. Valley Forge Ins. Co.*, 990 P.2d 414, 420

(Wash. Ct. App. 1999) (quoting *Kallevig*, 792 P.2d at 526).  Based on the available

evidence, State Farm concluded that Ms. Walker's loss was due to water, which

was excluded under the Water Exclusion.  *See* ECF No. 18-11 at 2-4.  Alternately,

State Farm determined that even if the efficient proximate cause doctrine applied, that the failure of the GFI was excluded under paragraph 1.f. Exclusions – "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown." *See id.* at 3.  Regardless, State Farm concluded that all potential causes of the loss were excluded from coverage beyond that afforded by the BUSD Endorsement. *See id.* at 5.

Accordingly, State Farm's motion for summary judgment is granted, and Ms. Walker's motion for summary judgment is denied, with respect to Ms. Walker's bad faith claim.

### E. IFCA Claim

Ms. Walker seeks summary judgment on her IFCA claim on the grounds that State Farm's alleged failures to provide analysis in its February 20, 2023, letter and to identify coverage limitations in the statement accompanying its February 16, 2023, payment constitute violations of the IFCA as well as violations of WAC 284-30-330(13) and (9).  ECF No. 17 at 23.  State Farm also seeks summary judgment on Ms. Walker's IFCA claim on the grounds that its partial denial of coverage and was proper and reasonable.  ECF No. 24 at 18-19.  In response to State Farm's motion for summary judgment, Ms. Walker alleges that she paid for "[a]ll of the investigation conducted as a result of the Loss" and that State Farm violated the IFCA by denying her payment of benefits that she was owed under the

1    Policy to investigate the loss.  ECF No. 30 at 24.

2        An insurer violates the IFCA if it "unreasonably denie[s] a claim for

3    coverage or payment of benefits" from a first party claimant.  RCW 48.30.015(1).

4    The IFCA "gives insureds a . . . cause of action against insurers who unreasonably

5    deny coverage or benefits."  *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389

6    P.3d 476, 477 (Wash. 2017).  The IFCA did not "create[] a new and independent

7    private cause of action for violation of [certain insurance] regulations in the

8    absence of any unreasonable denial of coverage or benefits."  *Id.*

9        As found above, Ms. Walker was not unreasonably denied coverage.  Nor

10   has Ms. Walker pointed to any evidence in the record to establish that State Farm

11   unreasonably denied her benefits she was owed under the Policy to investigate the

12   loss.[4]  Moreover, an IFCA claim may not be based on the violation of insurance

13

14   [4] The Court also notes that Ms. Walker did not raise this "benefits" theory of IFCA

15   liability in her Complaint, in which she only alleged that "State Farm unreasonably

16   denied [her] *claim for coverage*."  ECF No. 1 at 25 (emphasis added).  Ms. Walker

17   cannot now, in response to a motion for summary judgment, assert a new theory of

18   liability under the IFCA – that State Farm denied her *payment of benefits*.  *See La*

19   *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083,

20   1089 (9th Cir. 2010) (quoting *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435

regulations like WAC 284-30-330(13) and (9) in the absence of any unreasonable denial of coverage or benefits. *See Perez-Crisantos*, 389 P.3d at 477.

The Court grants State Farm's motion for summary judgment and denies Ms. Walker's motion for summary judgment as to the IFCA claim.

Accordingly, **IT IS HEREBY ORDERED:**

1.      Plaintiff's Motion for Partial Summary Judgment, **ECF No. 17**, is **DENIED**.

2.      Defendant's Motion for Partial Summary Judgment Regarding Coverage, IFCA Claim, and Bad Faith Claim, **ECF No. 24**, is **GRANTED**.

> a. The Court **GRANTS** summary judgment for Defendant on Plaintiff's declaratory judgment claims, as follows. The Court finds: (1) Defendant did not breach its duty to pay by not fully reimbursing Plaintiff; (2) Defendant did not breach its duties under the Policy by not fully reimbursing Plaintiff; (3) Defendant did not breach its extra-contractual duties by failing to deal fairly with Plaintiff or to give equal consideration to (and not put its own interests ahead of) Plaintiff's financial interests; failing to

---

F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.")).

ORDER - 37

accurately and clearly explain relevant policy provisions and how

such provisions apply to the facts surrounding the loss; failing to

provide an explanation for its partial payments to Plaintiff; and

failing to conduct a full, fair, and prompt investigation at its own

expense; and (4) Defendant is not estopped from arguing that

Plaintiff's claim is barred under the Policy's Water Exclusion.

b. The Court **GRANTS** summary judgment for Defendant on

Plaintiff's breach of contract claims.  The Court finds Defendant

did not breach its contract with Plaintiff by: (1) failing to explain

the reasons for its payment, (2) not accepting coverage for

Plaintiff's loss, (3) failing to adequately investigate, (4) failing to

explain coverage, or (5) failing to fully reimburse Plaintiff.

c. The Court **GRANTS** summary judgment for Defendant on

Plaintiff's IFCA claim.

d. The Court **GRANTS** summary judgment for Defendant on

Plaintiff's bad faith claim.

3. **DECLARATORY JUDGMENT** in favor of Defendant and against

Plaintiff is **HEREBY ENTERED** declaring as a matter of law that:

a. Defendant has no duty under the terms of Policy No. 47-BS-U722-

1 to pay for Plaintiff's losses sustained from water entering the

ORDER - 38

1    crawl space of her home other than the limited coverage afforded

2    by the Policy's BUSD Endorsement.

3        **IT IS SO ORDERED.**  The District Court Executive is directed to file this

4    order and provide copies to counsel.

5        DATED January 6, 2025.

6                    _s/Mary K. Dimke_
                    MARY K. DIMKE
7            UNITED STATES DISTRICT JUDGE

ORDER - 39